IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LESLIE BACON, )<br>)<br>      Plaintiff, )<br>)<br>v. )<br>)<br>JOEL ALLEN and )<br>THE CITY OF PRATT, KANSAS, )<br>)<br>      Defendants. )<br>_____) | Case No. 06-1222-WEB |

**Memorandum and Order**

Plaintiff Leslie Bacon brought this action claiming that defendant Joel Allen, acting under color of state law, deprived her of federal constitutional rights. *See* 42 U.S.C. § 1983. The complaint also alleges that plaintiff has state tort claims against the defendants under the Kansas Tort Claims Act. The complaint alleges that Allen, while on-duty as a uniformed police officer of the City of Pratt Kansas Police Department, directed plaintiff to follow him to a location where he allegedly grabbed her, pushed her against a car and demanded that she pull her pants down, and then proceeded to spank her numerous times with a wooden back-scratcher. The matter is now before the court on a motion to dismiss by defendant Allen, which argues that the complaint fails to show that Allen's actions occurred under color of state law.

    I. *Summary of Complaint.*

The following allegations are taken from the complaint. In June of 2005, plaintiff Leslie Bacon was pregnant with her second child. Doc. 1, ¶ 8. She was married but separated from her husband. She lived with a friend and the friend's oldest child. ¶ 9. Plaintiff was employed at Love's Country Store in Pratt. ¶ 10. Her supervisor was Cheryl Allen, who was married to

defendant Joel Allen (hereinafter "Allen").  *Id*.  Allen was employed by the Pratt, Kansas Police Department.  ¶ 11.  On occasion, Joel Allen would pick up plaintiff at her home and transport her to work and back home from work. ¶ 12.  On occasion, Allen would drink a beverage in Love's and talk to plaintiff while she worked. ¶ 13.  Allen did not have a relationship with plaintiff beyond that stated above.  ¶ 14.

On June 25, 2005, at about 9:30 p.m., Allen, while on duty and while in uniform, parked his police car in front of plaintiff's house and knocked on the door. ¶ 15.  Plaintiff answered the door, and Allen walked in and asked how she had been. ¶ 16.  Plaintiff said she was thinking about moving and might sell her television.  Allen indicated he would like to see the TV, and plaintiff showed it to him. ¶ 17-18.  Allen then stated that he needed to talk to plaintiff alone and, when she asked what about, he said he could not tell her. ¶ 19.  Allen advised that he would call her and let her know when and where to meet him so they could talk. ¶ 20.  Plaintiff suspected Allen wanted to visit with her about a bad check case previously filed against her because she had missed a court date in the case on or about June 20, 2005. ¶ 21.

Allen left plaintiff's home, and about 15 minutes later called and asked plaintiff to meet him at the Love's Country Store.  Plaintiff alleges that she thought Allen wanted to discuss official police business and that she thought she had no choice but to meet him. ¶ 22.  Plaintiff drove to the store and stepped inside to buy a soft drink.  Allen arrived in his police vehicle, still in uniform and on duty, and asked plaintiff to meet him outside. ¶ 25. Plaintiff "obeyed his commands, and went outside where Joel Allen informed Leslie Bacon to follow him in his police vehicle." ¶ 26.  Plaintiff still believed Allen was engaged in official business, and followed him to a church parking lot located within the Pratt city limits.  When they arrived, plaintiff and Allen got out of their cars and

plaintiff asked what he had to say and why they were at their current location. Allen allegedly approached, grabbed plaintiff and pushed her against her car, and held her with her stomach down on the trunk. ¶ 29. Allen hit plaintiff on the buttocks about 10 times with a wooden back scratcher identical to those sold at the Love's store. ¶ 30. Plaintiff advised Allen that he was hurting her and pleaded with him to stop. ¶ 31. Allen demanded that plaintiff pull her pants down so that he could spank her bare buttocks. ¶ 32. Feeling frightened and not free to disregard his command, plaintiff pulled her pants down just below the buttocks, and Allen spanked her once on the bare buttocks with the stick. ¶ 33. Plaintiff feared if she did not do so, he might rape or sexually assault her. ¶34-35. Plaintiff advised Allen that she was hurt and believed she was bleeding, and pleaded with him to stop hitting her. ¶ 36. He allegedly stated that he would spank her a couple of times more, and did so before stopping. ¶ 37.

Plaintiff was frightened and advised Allen that she was supposed to meet a friend, and that if she were not there soon he would begin looking for her. ¶ 38. Allen attempted to massage her buttocks, but she said she was too sore, and she moved away and was able to pull up her pants. ¶ 39. He tried to kiss her but she put her head down. He kissed her on the top of the head and said, "This will be our secret." ¶ 40-41. This statement caused plaintiff to fear that Allen might be planning further assaults. ¶ 41.

The complaint alleges that Allen detained the plaintiff without lawful grounds, that plaintiff was not free to leave or to disregard his orders, and that the incident was not consensual. It alleges that at all times Allen was acting pursuant to his authority as a City of Pratt Police Officer and under color of state law. Plaintiff further alleges that Allen's actions deprived her of rights under the Fourth and Fourteenth Amendments.

II. *Summary of Motion to Dismiss*.

Defendant Joel Allen moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), arguing the allegations in the complaint are insufficient to establish that Allen acted under color of state law. Doc. 15 at 1. Noting that the purpose of § 1983 is to deter state actors from using "the badge of their authority" to violate the constitutional rights of others, defendant points out that private conduct not fairly attributable to the state is not actionable under § 1983, no matter how wrongful the conduct.

Defendant cites *Haines v. Fisher*, 82 F.3d 1503 (10th Cir. 1996) as an example of private conduct not attributable to the state. In *Haines*, police officers staged a fake robbery as a practical joke on a friend who was a 7-Eleven store clerk. One of the officers phoned the clerk and told him to be on the lookout for an armed man, whereupon another officer entered the store dressed as a would-be robber toting an M-16. The Tenth Circuit affirmed summary judgment in favor of the individual defendants on a § 1983 claim brought by the clerk, finding as a matter of law that the officers did not use their authority to carry out the plan and thus did not deprive plaintiff of rights under color of state law. Defendant argues *Haines* is controlling because the facts show Allen made a personal visit to plaintiff's house and plaintiff "does not allege any fact to establish that she was somehow compelled to follow Allen because of his uniform or on-duty status." Doc. 15 at 13. Defendant also cites *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995), where the court found that a school custodian who sexually molested a student was not acting under color of state law. The court there found no real nexus between the employee's use or misuse of authority and the tortious conduct. Similarly, defendant argues, in *Beedle v. Wilson*, 422 F.3d 1059 (10th Cir. 2005) the Tenth Circuit held that a nurse's aide at a county hospital who sexually assaulted a patient did not act under

4

color of state law because the nurse's aide was in no way exercising state-derived authority over the patient.

Defendant notes it is the plaintiff's burden to allege facts showing a real nexus between defendant Allen's state-derived authority and his alleged tortious conduct. He argues plaintiff has failed to meet this burden and that the § 1983 claim must be dismissed. Moreover, defendant argues that in the absence of any viable federal claim the court should decline to exercise supplemental jurisdiction and should dismiss plaintiff's state law claims.

In response, plaintiff argues that Allen's actions were under color of state law because they could not have been completed without the authority of his office. Plaintiff argues an average person in her situation would not have believed she was free to disregard the instructions of the officer. On the other hand, "had defendant not been on duty, dressed as an officer, and operating a police vehicle or would have been a private citizen, plaintiff would have felt free to disregard an instruction from him to meet him behind the church to speak." Doc. 24 at 5. Plaintiff asserts that Allen never gave any indication he was engaged in anything other than his official business prior to the incident. "A person with reason to believe that she is the subject of police interest, confronted with an on duty officer, clothed with the indicators of his office and acting with the authority of his office would not feel free to disregard instructions to relocate to a less public area to discuss an official matter." *Id*. at 6.

Plaintiff contends the *Haines* case is distinguishable because that case involved a prank that was completed without any use or show of authority on the part of the officers. The officer posing as a robber in *Haines* hid the fact that he was a police officer from the victim of the prank, thus making clear that he did not use the authority of his office to violate the plaintiff's rights. Plaintiff

contends a more analogous "prank" case is *Fuerschback v. Southwest Airlines Co.*, 439 F.3d 1197 (10th Cir. 2006), where officers staged a mock arrest as a practical joke. On appeal, the Tenth Circuit found such conduct constituted an unlawful seizure under the Fourth Amendment. As for *Beedle v. Wilson*, plaintiff argues it too is distinguishable because the plaintiff in that case failed to allege any nexus between the assault and the hospital worker's capacity as a state employee, whereas Bacon has alleged such a connection. Plaintiff argues that Allen abused his authority in confronting and removing her to a more secluded location where he could attack her. Plaintiff argues that under the standards of Rule 12(b)(6) governing a motion to dismiss, her allegations are sufficient to show that Allen was acting under color of state law.

    III. *Rule 12(b)(6) Standards*.

The court applies the standards of Rule 12(b)(6) to determine if plaintiff's allegations – including the allegation that defendant Allen acted under color of state law – are sufficient to state a claim upon which relief can be granted. *See Monsky v. Moraghan*, 127 F.3d 243, 245 (2nd Cir. 1997) (Rule 12(b)(6) rather than 12(b)(1) applies to non-frivolous allegation of color of state law); *E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1305 (10th Cir. 2001) (reviewing "color of state law" allegation under Rule 12(b)(6)).

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir.1994). The issue is not whether the plaintiff will ultimately prevail, but whether she is entitled to offer any evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Under the limited review applicable at the pleading stage, a complaint may not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In making this determination, all well-pleaded facts in the complaint – as distinguished from conclusory allegations – must be taken as true. *See Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). *See also E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297 (10th Cir. 2001) (declining to place significance on bare conclusory allegations of state action when they are unsupported by any factual allegations).

    IV.  *Discussion*.

Section 1983 provides in part that every person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State" subjects any person within the state to the deprivation of rights secured by the Constitution or laws of the United States shall be liable to the party injured. The requirement that the person be "acting under color of state law" has traditionally been defined to mean a "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, ..." *United States v. Classic*, 313 U.S. 299, 326 (1941). This is in keeping with the purpose of § 1983, which Congress enacted "'to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'" *Scheuer v. Rhodes*, 416 U.S. 232, 243 (1974) [citation omitted].

In other words, under "color" of law means under pretense of law. The law draws a distinction between mere torts of state officials and acts done under color of state law. *Screws v. United States*, 325 U.S. 91, 111 (1945) (Douglas, J.). A defendant in a § 1983 suit acts under color of state law when he abuses the position given him by the state while exercising responsibilities pursuant to state law. *Beedle v. Wilson*, 422 F.3d 1059, (10th Cir. 2005). By contrast, the wrongful

act of an individual unsupported by any such authority, is simply a private wrong, or a crime of that individual...." *See Wyatt v. Cole*, 994 F.2d 1113, 1117-18 (5th Cir.1993). "It is well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state." *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995). Moreover, "it is the plaintiff's burden to plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.' " *Id*. at 494.

In *David v. City and County of Denver*, 101 F.3d 1344, 1352-53 (10th Cir. 1996), the court noted the following:

> The under color of law determination rarely depends on a single, easily identifiable fact, such as the officer's attire, the location of the act, or whether or not the officer acts in accordance with his or her duty. *Martinez*, 54 F.3d at 986. Instead one must examine "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Id*. Courts have described the central inquiry in varying terms. According to the First Circuit, "[t]he key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law." *Id*. For the Seventh Circuit, the fundamental question is "whether [the officer's] actions related in some way to the performance of a police duty." *Gibson v. City of Chicago*, 910 F.2d 1510, 1517 (7th Cir.1990).

*See also Dry v. City of Durant*, 2000 WL 1854140, 242 F.3d 388 (Unpublished; text available in Westlaw) (10th Cir., Dec. 19, 2000) (noting totality of circumstances approach to "color of state law" inquiry, including factors such as defendant's actual authority, objective indicia of authority, and victim's perception of encounter).

In this instance, plaintiff alleges that Allen was on-duty and in uniform when he showed up at her house in his patrol car. Although he initially spoke to plaintiff about matters unrelated to law

enforcement, at some point he stated that he needed to speak to plaintiff alone about something. When she inquired as to what, he told her he could not say and would contact her by telephone to tell her when and where to meet him. Defendant called shortly thereafter and asked plaintiff to meet him at the convenience store where she worked. Plaintiff did so, and Allen arrived at the store in his patrol car – again, still in uniform and on-duty – and according to the complaint "informed" her to follow him in his police vehicle. The complaint characterizes the officer as giving "commands" to plaintiff. Plaintiff followed Allen, allegedly believing he was engaged in official business and intended to inquire into a pending criminal matter. When plaintiff followed Allen to the location chosen by him, she was allegedly assaulted by him.

Defendants do not dispute that Allen was authorized by state law to detain and question individuals such as plaintiff about criminal matters. Plaintiff may be able to prove that Allen misused that authority as part of a scheme to get the plaintiff alone and to assault her. It is true, as defendant points out, that Allen apparently never expressly said anything about wanting to question plaintiff. But plaintiff may be able to show that Allen's actions were purposely ambiguous in this regard so as to convey an impression that plaintiff was obligated to accompany him for questioning about a criminal matter. *Cf. Jojola*, 55 F.3d at 494 ("The complaint is devoid of any allegation that Chavez enticed Bridget into the classroom through the use or misuse of any state authority he may have possessed."). Moreover, the complaint alleges that at the convenience store Allen gave "commands" to plaintiff to follow him. *Cf. Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 480 (9th Cir. 1991) ("[t]he jury could reasonably have concluded that defendant used his government position to exert influence and physical control over these plaintiffs in order to sexually assault them."); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, (11th Cir. 2001) (evidence supported

9

conclusion that defendant invoked his authority as City Manager to create the opportunity to be alone with plaintiff to commit sexual assault). In this case, plaintiff has alleged that Allen used his position and authority as a law enforcement officer to help carry out his assault and that the assault was made possible only by virtue of his status as a police officer. And according to the complaint, Allen followed up his alleged assault with the comment, "This will be our secret," which, depending on the circumstances, could be viewed as an implied threat to use his position as a law enforcement officer to ensure plaintiff's silence.

Defendant claims dismissal of the complaint is required by *Haines v. Fisher*, 82 F.3d 1503 (10th Cir. 1996), but as plaintiff points out, the officer in that case purposely *avoided* using any show of authority to perform the prank "robbery." By contrast, in the instant case plaintiff may be able to show that Allen exercised a show of authority – including his uniform, his patrol car, his on-duty status, and his commands to plaintiff to follow him – in order to get plaintiff alone and to carry out the alleged assault. Plaintiff has thus alleged a real nexus between defendant's duties and the alleged deprivation of rights. *Cf. Beedle v. Wilson*, 422 F.3d 1059 (10th Cir. 2005) (no connection between duties of nurse's aide and her assault on a patient; "[t]here was no allegation, for example, that [defendant] was the one who heavily sedated [plaintiff] to enable her to carry out the alleged assault.").

After examining the allegations of the complaint in the light most favorable to the plaintiff, the court concludes that defendant's motion to dismiss should be denied. Defendant has failed to show that plaintiff could prove no set of facts in support of her allegations that would entitle her to relief. Under the allegations in the complaint, plaintiff may be able to prove that Allen employed – and abused – his authority as a law enforcement officer to carry out a scheme to assault the

plaintiff.

      V.  *Conclusion*.

Defendant Joel Allen's Motion to Dismiss (Doc. 14) is DENIED.  IT IS SO ORDERED this 27th   Day of June, 2007, at Wichita, Ks.

                                              s/Wesley E. Brown  
                                              Wesley E. Brown  
                                              U.S. Senior District Judge